**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christopher Mathew Payne,<br><br>Petitioner,<br><br>v.<br><br>David Shinn,<br><br>Respondents. | No. CV-20-00459-TUC-JAS<br><br>**ORDER**<br><br>DEATH PENALTY CASE |

Before the Court is Respondents' motion for an order precluding Payne's defense team from directly contacting any victim in this case and directing that Payne initiate any such contact through Respondents' counsel. (Doc. 12.) Payne opposes the motion. (Doc. 13.)

**I.    Background**

Petitioner Christopher Mathew Payne is an Arizona death row inmate seeking habeas relief in this Court. He was convicted in Pima County Superior Court of two counts of first degree murder among other charges and was sentenced to death. The following account of the crimes is taken from the decision of the Arizona Supreme Court affirming his convictions and sentences. *State v. Payne*, 233 Ariz. 484, 496–97, 314 P.3d 1239, 1251–52 (2013)

Payne and his girlfriend, Reina Gonzales, starved and abused Payne's children, Ariana, age three, and Tyler, age four, until they died.

Payne left Ariana and Tyler with Gonzales while he worked, first driving for a medical transportation company and later selling heroin. Gonzales called Payne at work several times a day to complain about the children.

Payne began punishing Ariana and Tyler by locking them in a closet while he was away. By late June 2006, the children were kept in the closet permanently. Payne initially fed them once a day, but after about a month he stopped feeding them entirely. Payne checked on the children perhaps once a day but did not bathe them or let them out to use the bathroom or get fresh air.

Sometime in August 2006, Payne discovered that Ariana had died. He left her body in the closet with Tyler, who was still alive. The next day, Payne stuffed Ariana's body into a duffel bag, which he put back into the closet with Tyler. Payne found Tyler dead approximately one week later.

In mid-September, Payne put the children's bodies in a tote box, which he placed in a rented storage unit. After Payne failed to pay the rental fee, staff opened the unit. They found only the tote box inside. It smelled "really bad," so they threw it in a dumpster. A staff member became concerned about the smell and called the police two days later.

The police found Ariana's partially decomposed body inside the tote box. She had 12 broken ribs, a broken spine, and a broken shoulder. The investigation led police to Payne and Gonzales.

Payne confessed that he failed to obtain help for the children and allowed them to die in his care. Police never found Tyler's body. In Payne's apartment, police found blood on the walls inside the closet, an opening in the closet wall stuffed with feces and human hair, and several patches of body fluids on the carpet.

The State charged Payne and Gonzales with first degree murder and other crimes. In exchange for testifying, the State allowed Gonzales to plead guilty to two counts of second degree murder. She received concurrent 22–year prison sentences. The jury found Payne guilty of three counts of child abuse, two counts of concealing a dead body, and two counts of first degree murder. At sentencing, the jury found three aggravating factors: that

1 the murders were especial cruelty, heinous, or depraved; there were multiple homicides; and the victims were under age 15. The jury found the mitigating circumstances were not substantial enough to call for lenience. Payne was sentenced to death.

After his convictions and sentences were affirmed on appeal, Payne unsuccessfully pursued post-conviction relief in state court. On October 27, 2020, he filed a notice of intent to seek habeas corpus relief in this Court. (Doc. 1.) The Court appointed counsel and set a deadline of September 17, 2021, for Payne to file his habeas petition. (Docs. 3, 15.)

## II. Discussion

In support of their request to preclude victim contact, Respondents cite provisions of both state and federal law, including A.R.S. § 13-4433(B) of the Arizona Victim's Rights Bill ("VBR"), which provides that "[t]he defendant, the defendant's attorney or an agent of the defendant shall only initiate contact with the victim through the prosecutor's office," and the Crime Victims' Rights Act (CVRA), which affords state crime victims in federal habeas cases "the right to be treated with fairness and with respect for the victim's dignity and privacy." 18 U.S.C. § 3771(a)(8).

Payne argues that Respondents' request is governed by federal law and that the relief sought is not appropriate under the CVRA; that his federal constitutional rights to "family association," free speech, and due process under the First and Fourteenth Amendments take precedence over the provisions of the VBR; and that granting the request would unduly burden his investigation. The Court disagrees.

As Payne acknowledges, in other capital habeas cases in this district, courts have considered and rejected these arguments, ordering petitioners to obtain consent through Respondents' counsel before contacting a victim and, in the event a victim did not consent, ordering further briefing. *See, e.g.*, *Martinez v. Shinn*, No. CV-20-00517-PHX-DJH, 2020 WL 3574594, at *3 (D. Ariz. July 1, 2020); *Pandeli v. Ryan*, No. CV-17-1657-PHX-JJT (D. Ariz.); *Chappell v. Ryan*, No. CV-15-00478-PHX-SPL (D. Ariz.); and *Sansing v. Ryan*, No. 11-CV-1035-PHX-SRB (D. Ariz.).

In *Sansing*, the court explained that its "directive requiring Petitioner to obtain consent from Respondents' counsel to contact victims furthers the rights to dignity and privacy set forth in § 3771(a)(8). It is a reasonable limitation that does not unfairly disadvantage Petitioner." *Sansing*, No. 11-CV-1035-PHX-SRB (D. Ariz.) (Doc. 29); *see Roseberry v. Ryan*, No. 15-CV-1507-PHX-NVW (D. Ariz.) (Doc. 18).

These courts have determined that whether or not § 13-4433(B) directly applies to federal habeas proceedings through the CVRA, the mechanism it establishes furthers the goal of respecting a crime victim's dignity and privacy without unduly burdening petitioners. *See, e.g.*, *Chappell*, No. CV-15-00478-PHX-SPL (D. Ariz. Jul. 21, 2015) (Doc. 19). The courts have further explained that "[u]sing counsel for Respondents to channel requests to contact victims, as contemplated by the CVRA itself, 18 U.S.C. § 3771(b)(2)(B)(i) and (d)(1), does not unduly burden [petitioner's] access to the victims." *Pandeli v. Ryan*, No. CV-17-1657-PHX-JJT (D. Ariz. Oct. 5, 2017) (Doc. 23).

Payne contends that the analysis in these case does not apply because in his case the victims—family members of the murdered children—are also key sources of mitigating information, so imposing Respondents' counsel as an intermediary would be unduly burdensome.[1] For the reasons set forth in Respondents' reply, this argument is not persuasive.

First, Payne acknowledges that family members who meet the statutory definition of victim have not objected to contact with his legal team. In fact, his father, stepmother, and stepsister all testified on his behalf during the mitigation phase of his trial. (Doc. 13 at 11.) As Respondents note, any contact they had with Payne's trial counsel took place within the strictures of the VBR, demonstrating that the order sought by Respondents, applying those same procedures, would not unduly burden Payne. The case is therefore distinguishable from *Armstrong v. Ryan*, No. CV-15-358-TUC-RM (D. Ariz. June 4, 2018)

---

[1] Payne intends to contact the following individuals who meet the statutory definition of "victim" under A.R.S. § 13–4401(19): Forrest Payne, Payne's biological father; Patricia Payne, Payne's stepmother; Jamie Hallam, the biological mother of Ariana and Tyler; Linda Consentino, Hallam's biological mother and the biological grandmother of Ariana and Tyler; and Richard Barcalow, Hallam's stepfather and step-grandfather of Ariana and Tyler. (Doc. 13 at 5–6.)

(Doc. 91), where victims who were also the petitioner's family members refused to receive correspondence from petitioner's counsel.

The VBR places no burden on Payne with respect to victims who wish to contact him or his counsel. They are free to do so. Further, Payne is incorrect when he argues that he would be required to obtain permission from Respondents' counsel to contact his family members. Under the VBR, Respondents' counsel simply conveys any such request to the victim, who then determines whether or not to grant the request.

Payne argues that granting the motion will give Respondents "unwarranted insight" into the defense team's work product. (Doc. 13 at 13.) This argument is unfounded. Respondents assert that they will be present at any interview with a victim only at the victim's request and that they will not be informed of the contents of any discussion between Payne and a victim. (Doc. 14 at 7.)

The Court also rejects Payne's argument that an order granting the relief sought by Respondents would unconstitutionally burden his or habeas counsel's First Amendment rights. (Doc. 13 at 12.) With respect to counsel, as another court in this district observed, "attorneys are properly subject to an array of different restrictions and regulations that can have the effect of limiting their ability to obtain information—even potentially exculpatory information—from prospective witnesses." *Johnson v. Ryan*, No. CV-18-00889-PHX-DWL, 2018 WL 6573228, at *6 (D. Ariz. Dec. 13, 2018) (citing Ariz. R. Prof. Conduct, ER 4.1(a); Ariz. R. Prof. Conduct, ER 4.2; and LRCiv 39.2(b)).

Payne argues that counsel will be prevented from "establishing relationships with [Payne's] immediate family and seeking their assistance in providing information about [him]." (Doc. 13 at 11.) As already stated, however, if they choose to do so these family members are free to initiate contact with Payne and his counsel at any time, without the involvement of Respondents.

Finally, the Court agrees that Payne fails to demonstrate that the relief sought by Respondents would interfere with his "family relationships" as protected by the First and Fourteenth Amendments. Payne's ability to communicate with his family is already limited

by his imprisonment for the murder of his children, as is his right to freedom of assembly. Neither of these rights, nor his right to due process, is abridged by requiring Payne to initiate contact with the victims through Respondents' counsel, especially where the victims are free to initiate such conduct themselves.

Accordingly,

**IT IS HEREBY ORDERED** granting Respondents' motion for an order precluding contact with victims (Doc. 12). No person who is defined as a victim in this matter pursuant to Arizona law shall be contacted by anyone working with or on behalf of Payne or Payne's counsel unless the victim, through counsel for Respondents, has consented to such contact. If consent is not provided and Payne nonetheless believes the contact is necessary, he may file a motion with the Court explaining the necessity for such contact.

Dated this 1st day of March, 2021.

Honorable James A. Soto
United States District Judge