**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christopher Payne,<br><br>    Petitioner,<br><br>v.<br><br>Ryan Thornell, et al.,<br><br>    Respondents.[1] | No. CV-20-0459-TUC-JAS<br><br>**ORDER**<br><br><u>DEATH PENALTY CASE</u> |

Petitioner Christopher Payne is an Arizona death row inmate seeking habeas relief from this Court. He has filed a motion pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005), seeking to stay these proceedings and hold them in abeyance while he returns to state court to exhaust Claim 21, based on *Simmons v. South Carolina*, 512 U.S. 154 (1994). (Doc. 59.) Payne also requests that this Court authorize his habeas counsel to represent him in his anticipated state court post-conviction proceeding. (*Id.* at 10.) Respondents oppose a stay and take no position on the request to appoint federal counsel. (Doc. 61.)

**I.  BACKGROUND**

In 2006, Payne and his girlfriend starved and abused his children, Ariana, age three, and Tyler, age four, until they died. Payne was convicted of two counts of first degree murder, three counts of child abuse, and two counts of concealing a dead body. *State v. Payne*, 233 Ariz. 484, 496, 314 P.3d 1239, 1251 (2013). The jury found three aggravating

---

[1] Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Ryan Thornell, the Director of the Arizona Department of Corrections, Rehabilitation and Reentry, is substituted for the former Director, David Shinn.

factors: the murders were especially cruel, heinous, or depraved; Payne was convicted of multiple homicides; and the victims were under the age of 15. *Id.* at 497, 314 P.3d at 1252. The jury found the mitigating evidence was not sufficiently substantial to call for leniency and sentenced Ellison to death. *Id.* On direct appeal, the Arizona Supreme Court affirmed the convictions and sentences. *Id.* at 924, 928. On September 17, 2021, following unsuccessful state post-conviction relief ("PCR") proceedings, Payne filed a Petition for Writ of Habeas Corpus. (Doc. 28.)

**II.    Applicable Law**

    A.    *Simmons, Lynch, Cruz*

In *Simmons*, the United States Supreme Court held that when "a capital defendant's future dangerousness is at issue, and the only sentencing alternative to death available to the jury is life imprisonment without possibility of parole, due process entitles the defendant 'to inform the jury of [his] parole ineligibility, either by a jury instruction or in arguments by counsel.'" *Cruz v. Arizona*, 598 U.S. ---, 143 S. Ct. 650, 655 (2023) (quoting *Shafer v. South Carolina*, 532 U.S. 36, 39 (2001); *Kelly v. South Carolina*, 534 U.S. 246, 248 (2002)).

Until 2012, Arizona law permitted imposition of a parole-eligible life sentence for defendants convicted of first-degree murder. *See* A.R.S. § 13–703(A) (2000), renumbered as A.R.S. § 13–751(A). In 1994, however, Arizona had abolished parole for all felonies committed after 1993. A.R.S § 41–1604.09(I)(1). Therefore, "the only 'release' available to capital defendants convicted after 1993 was, and remains, executive clemency." *Cruz*, 143 S. Ct. at 655. Nonetheless, the Arizona Supreme Court refused to apply *Simmons* on the grounds that Arizona's sentencing scheme was sufficiently distinct from the one at issue in *Simmons*. *See id.*, 143 S. Ct. at 655 (discussing history of the application of *Simmons* in Arizona). The Supreme Court summarily rejected this reasoning in *Lynch,* holding that "it was fundamental error to conclude that *Simmons* 'did not apply' in Arizona." *Id*. at 654 (quoting *Lynch v. Arizona*, 578 U.S. 613, 615 (2016).

Finally, in *Cruz*, the defendant argued at trial and on appeal that under *Simmons* he

should have been allowed to inform the jury that a life sentence in Arizona would be without parole.

The trial court and the Arizona Supreme Court held that Arizona's capital sentencing scheme did not trigger application of *Simmons*. *State v. Cruz*, 218 Ariz. 149, 181 P.3d 196 (2008). After the United States Supreme Court issued its holding in *Lynch*, Cruz sought to raise the *Simmons* issue again, in a PCR petition under Arizona Rule of Criminal Procedure ("Rule") 32.1(g), which permits a defendant to bring a successive petition if "there has been a significant change in the law that, if applicable to the defendant's case, would probably overturn the defendant's judgment or sentence." The Arizona Supreme Court denied relief, concluding that *Lynch* was not "a significant change in the law." *State v. Cruz*, 251 Ariz. 203, 487 P.3d 991 (2021). The United States Supreme Court disagreed, vacating the Arizona Supreme Court's judgment and remanding the case. *Cruz*, 143 S. Ct. at 662. The Court found that *Lynch* "overruled binding Arizona precedent" and represented a "clear break from the past." *Id.* at 658–59.

B.     *Rhines*

*Rhines*, 544 U.S. at 273–77, authorizes a district court to stay a petition in "limited circumstances" to allow a petitioner to present unexhausted claims to the state court without losing the right to federal habeas review pursuant to the relevant one-year statute of limitations.

Under *Rhines*, "a district court must stay a mixed petition"—that is, a petition containing both exhausted and unexhausted claims—"only if: (1) the petitioner has 'good cause' for his failure to exhaust his claims in state court; (2) the unexhausted claims are potentially meritorious; and (3) there is no indication that the petitioner intentionally engaged in dilatory litigation tactics." *Wooten v. Kirkland*, 540 F.3d 1019, 1023 (9th Cir. 2008) (citing *Rhines*, 544 U.S. at 278).

A claim is exhausted if (1) the petitioner has fairly presented the federal claim to the highest state court with jurisdiction to consider it or (2) no state remedy remains available for the claim. *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996). The latter form of

exhaustion is described as "technical exhaustion" through procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991); *Smith v. Baldwin*, 510 F.3d 1127, 1139 (9th Cir. 2007); *Woodford v. Ngo*, 548 U.S. 81, 92 (2006). In Arizona, Rule 32 of the Rules of Criminal Procedure provides that a petitioner is procedurally barred from relief on any constitutional claim that could have been raised on appeal or in a prior PCR petition. Ariz. R. Crim. P. 32.1(a); 32.2(a)(3). A petitioner generally may not return to state court to exhaust a claim unless it falls within the category of claims for which a successive PCR petition is permitted. *See* Ariz. R. Crim. P. 32.1(b)–(h), 32.2(a) & (b).

A *Rhines* stay would be inappropriate in a federal habeas case if the claims for which a petitioner seeks a stay are technically exhausted through procedural default. *See e.g.*, *Armstrong v. Ryan*, No. CV-15-00358-TUC-RM, 2017 WL 1152820 (D. Ariz. March 28, 2017); *White v. Ryan*, No. CV-09-2167PHX-FJM-LOA, 2010 WL 1416054, *12 (D. Ariz. March 16, 2010) ("Because the Petition in this case contains claims that are either actually or technically exhausted, it is not a mixed Petition and *Rhines* does not apply.").

### III. ANALYSIS

Payne seeks a stay so he can raise Claims 21 and 23[2] of his habeas petition in state court. (Doc. 59.) Payne disagrees with Respondents contention that the motion to stay Claim 21 should be denied because the claim is technically exhausted and procedurally defaulted, arguing instead that the claim is merely unexhausted. (*See* Doc. 59 at 2.)

#### A. Claim 21

In Claim 21, Payne alleges that his due process rights were violated under *Simmons* because the jury was not informed of his ineligibility for parole. (Doc. 44 at 127.) Payne's jury was informed that if it rejected a death sentence, the judge could impose a sentence of life with the possibility of parole after 35 years. (Doc. 40 at 16.) That was incorrect—Payne would never be eligible for parole. *See Lynch*, 578 U.S. 613. Payne asserts that the United

---

[2] Because Payne concedes his ability to raise Claim 23 rises or falls on whether he is entitled to stay his habeas petition to exhaust Claim 21 (*see* Doc. 61 at 5), the Court does not separately address Respondents' assertion that Payne is not entitled to a stay to allow him to pursue Claim 23 in state court. (*See* Doc. 60 at 6)

- 4 -

States Supreme Court's decision in *Cruz*, 143 S. Ct. 650, establishes a viable mechanism for state court review of his *Simmons* claim.[3]

In addressing the motion to stay, Respondents do not dispute that Payne has shown good cause for his failure to exhaust this claim or that Payne has not been intentionally dilatory. (See Doc. 60 at 5.) The Court agrees with this analysis and finds that Payne has demonstrated good cause for his failure to exhaust Claim 21, that he did not engage in dilatory litigation tactics.

Respondents also do not dispute that Payne's future dangerousness was at issue or that he would have been entitled to a *Simmons* instruction if he had asked for one. (*See id.* 4–5); *see also Kelly*, 534 U.S. 252 (future dangerousness is at issue when it is a logical inference from the evidence, or the State injects it through closing argument). Nonetheless, Respondents argue Claim 21 is plainly meritless[4] because Payne did not request a parole-ineligibility instruction or otherwise seek to inform the jury of his parole ineligibility, and thus the motion for a stay should be denied. (Doc. 60 at 6) (citing *State v. Bush*, 244 Ariz. 575, 592–93, 423 P.3d 370, 387–88 (2018)). Payne does not dispute that his trial counsel did not request such an instruction. (*See* Doc. 61 at 2–5).

A claim is potentially meritorious unless "it is perfectly clear that the [petitioner] does not raise even a colorable federal claim." *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005); *see* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies

---

[3] In Claim 21, Payne asserts the incorrect jury instruction at issue violated both his due process and Eighth Amendment rights. (*See* Doc. 44 at 127.) Here, Payne seeks to stay his petition and return to state court to exhaust only his due process claim under *Simmons*, thus this is the only portion of the claim this Court here considers. (*See* Doc. 59 at 7); *see also Simmons*, 512 U.S. at 162 n. 4 (reserving Eighth Amendment question); *id.* at 174 (Ginsburg, J., concurring) (narrowly construing holding to due process aspects).

[4] Respondents do dispute Payne's contention that Cruz renders Claim 21 unexhausted. (See Doc. 60 at 4–5.) However, their argument in support of finding Claim 21 technically exhausted is in essence the same argument they make in asserting the claim is plainly meritless. Because the Court agrees that Payne's *Simmons* claim is plainly meritless, it need not address the alternative argument that the claim is therefore also technically exhausted.

available in the courts of the State."); *Dixon v. Baker*, 847 F.3d 714, 722–23 (9th Cir. 2017) (finding claim met second prong of *Rhines* test because it was not "plainly meritless"); *Rhines*, 544 U.S. at 277 (a stay is inappropriate in federal court to allow claims to be raised in state court if they are subject to dismissal under § 2254(b)(2) as "plainly meritless."). "In determining whether a claim is 'plainly meritless,' principles of comity and federalism demand that the federal court refrain from ruling on the merits of the claim unless 'it is perfectly clear that the petitioner has no hope of prevailing.'" *Dixon*, 847 F.3d at 722 (quoting *Cassett*, 406 F.3d at 624).

The Court finds that Payne has "no hope of prevailing" on his *Simmons* claim; it is therefore plainly meritless and will be denied. *See Cassett,* 406 F.3d at 624; 28 U.S.C. § 2254(b)(2). The Arizona Supreme Court's decision in *Bush*, cited by Respondents, correctly explains the due process holding of *Simmons* and validates their argument that Payne has failed to present a colorable claim.

Parsing the plurality opinion in *Simmons*, the *Bush* court found Justice O'Connor's opinion, separately concurring in the judgment with Chief Justice Rehnquist and Justice Kennedy joining her opinion, represented the "'narrowest ground[]' that 'may be viewed as [the] position taken by' the Court on the issue of what due process requires in this context.'" *Bush*, 244 Ariz. at 592, 423 P.3d at 387 (quoting *Marks v. United States*, 430 U.S 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . .") (internal quotation omitted). Accordingly, the Arizona Supreme Court in *Bush* held that "the due process right under *Simmons* merely affords a parole-ineligible capital defendant the right to 'rebut the State's case' (if future dangerousness is at issue) by informing the jury that 'he will never be released from prison' if sentenced to life." *Id.* (quoting *Simmons*, 512 U.S. at 177 (O'Connor, J., concurring in the judgment)); *see also O'Dell v. Netherland*, 521 U.S. 151, 159 (1997) (noting that in *Simmons* "there was no opinion for the Court" and that four Justices merely "concluded that the Due

Process Clause required allowing the defendant to inform the jury—through argument or instruction—of his parole ineligibility in the face of a prosecution's future dangerousness argument"). Even in the absence of the so-called "*Marks* rule," Payne cites to no controlling authority finding *Simmons* error where a defendant has failed to request a parole ineligibility instruction in response to the State's assertion of future dangerousness.

In *Bush*, the Arizona Supreme Court noted that in every case in which either it or the United States Supreme Court has found reversible *Simmons* error, the trial court had "either rejected the defendant's proposed jury instruction regarding his ineligibility for parole, prevented defense counsel 'from saying anything to the jury about parole ineligibility' or both." *Id.* at 593, 423 P.3d at 388 (citing *Simmons*, 512 U.S. at 175 (Ginsburg, J., concurring); *Lynch*, 578 U.S. at 614 (both); *Kelly*, 534 U.S. at 249 (refusal to inform); *Shafer*, 532 U.S. at 41–46 (both); *State v. Hulsey*, 243 Ariz. 367, 394, 408 P.3d 408, 435 (both); *State v. Rushing*, 243 Ariz. 212, 221, 404 P.3d 240, 249 (2017) (refusal to inform); *State v. Escalante-Orozco*, 241 Ariz. 254, 284, 386 P.3d 798, 828 (2017) (refusal to inform)). The *Bush* court concluded that relief under *Simmons* was foreclosed because, "[u]nlike in the aforementioned cases" in which courts found reversible *Simmons* error, "the trial court neither refused to instruct, nor prevented Bush from informing, the jury regarding his parole ineligibility." *Id.*

Payne contends that *Bush* is distinguishable, because there the court provided a vague instruction about the availability of "release after 35 years," *Bush*, 244 Ariz. at 590–91, 423 P.3d at 385–86, presumably invoking the possibility of executive clemency, which at that time the Arizona Supreme Court incorrectly thought distinguished its sentencing and parole schemes from those at issue in *Simmons*. (Doc. 61 at 3) (citing *Lynch*, 578 U.S. at 615). In contrast, Payne asserts, his jury was not given a vague instruction but was instructed "clearly" and "incorrectly" that a life sentence might include parole. (Doc. 62 at 3.)

> The court instructed his jury that that there were three possible penalties:
> "One, death by lethal injection; Two, life imprisonment with no possibility

> of parole or release from imprisonment on any basis; Three, life imprisonment *with a possibility of parole* or release from imprisonment, but only after 35 calendar years of incarceration have been served."

(Doc. 40 at 16) (quoting RT 03/27/2009 at 170). This instruction was an incorrect statement of the law regarding parole eligibility. Thus, Payne asserts, even assuming the Arizona Supreme Court's interpretation in *Bush* would control how it would resolve a similar case under Rule 32.1(g), it does not indicate how the Arizona Supreme Court would apply *Simmons* under Rule 32.1(g) in a case like Payne's, in which the trial court wrongly instructed the jury on the possibility of parole. (Doc. 62 at 3–4.)

Payne points to the State's admission, in its supplemental *Cruz* brief on remand, that "[u]nlike historical *Simmons* cases—where the jury instructions are potentially misleading because they omit mention of parole ineligibility—Cruz's jury," like Payne's, "was affirmatively and incorrectly instructed that Cruz was eligible for parole. Thus, even more than in *Simmons*, the instruction here surely left the jury with what *Simmons* called a 'grievous misperception.'" (Doc. 61 at 3) (citing Doc. 59-2, Ex. B at 1). But the degree of misperception is not a factor in consideration of a *Simmons* claim. The *Simmons* due process right is implicated any time the State calls into question, implicitly or explicitly, a defendant's future dangerousness. In that event, the violation is established by demonstrating that defendant's counsel was prevented from informing the jury that a defendant was not parole eligible or that the trial court refused to give a parole ineligibility instruction. *See Cruz*, 143 S. Ct. at 655 (explaining that "due process entitles the defendant to inform the jury of [his] parole ineligibility, either by a jury instruction or in arguments by counsel.") (internal quotation omitted).

Payne asserts that the court in *Bush* had no occasion to determine how failing to request a parole ineligibility instruction would operate in the context of the change in law wrought by *Cruz*. In *Bush*, however, the court acknowledged that the trial court's jury instruction, referring to the possibility of release after 35 years, was "apparently . . . incorrect" under the Supreme Court's opinion in *Lynch*. *Bush*, 244 Ariz. at 592, 423 P.3d at 387. Nonetheless, the court found *Simmons* relief foreclosed by the defendant's failure

to request a *Simmons* instruction. Payne fails to demonstrate how the *Cruz* decision on a procedural ruling calls into question the *Bush* court's *Simmons* analysis, as the court plainly acknowledged in *Bush* that the jury instruction was incorrect under *Lynch*, and analyzed the *Simmons* claim accordingly. Stated differently, while *Cruz* may establish a route for Payne to actually exhaust the claim in state court, it does not speak to the merits of Payne's *Simmons* claim.

Payne also asserts that the Supreme Court, in *Kelly v. South Carolina*, 534 U.S. 246, 256 (2002), as noted by Justice Rehnquist in the dissent, *id.* at 258–59, "expanded the due process right announced in *Simmons* and explained in the context of *Simmons* error that '[a] trial judge's duty is to give instructions sufficient to explain the law.'" (Doc. 61 at 4) (quoting *Kelly*, 534 U.S. at 256.) But Payne's formulation of the holding in *Kelly* is misleading. In *Kelly*, the Court did not expand the right, as suggested by Payne, to impose an affirmative duty on the court to provide a *Simmons* instruction even in the absence of such a request. Counsel in *Kelly* did request, and was denied, a *Simmons* instruction. The expansion, as explained by Justice Rehnquist, was the formulation of a new test for whether the State invoked future dangerous by raising an "implication" of future dangerousness to society, as opposed to arguing a defendant's future dangerousness. Thus, *Kelly* does not provide a basis for distinguishing Payne's case from the holding in *Bush*.

Payne asserts that the United States Supreme Court's recent remand of six cases raising *Simmons*-based due process claims, including four in which the petitioners never sought a parole ineligibility instruction in the manner noted in *Bush*, calls into question that court's interpretation of *Simmons*. (*See* Doc. 61 at 2) (citing *Burns v. Arizona*, 143 S. Ct. 997, 998) (Mar. 6, 2023) (mem.)). The Court disagrees. The narrow issue presented in *Burns* was "the same question presented" in *Cruz*—"[w]hether the Arizona Supreme Court's holding that Arizona Rule of Criminal Procedure 32.1(g) precluded post-conviction relief is an adequate and independent state-law ground for the judgment," *see Burns v. Arizona*, Joint Petition for Writ of Certiorari, No. 21-847 (U.S. Oct. 4, 2021)—and does not instruct this Court on the merits of the *Simmons* claim presented here. *See*

*e.g.*, *Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1288 (9th Cir. 1985) ("[U]nstated assumptions on non-litigated issues are not precedential holdings binding future decisions.").

Claim 23

Payne suggests that, if this Court grants a *Rhines* stay, he will also present Claim 23 in state court, which alleges several instances of ineffective assistance of counsel. (*See* Doc. 59, at 9–10.) As Respondents correctly note, however, he does not assert that he is independently entitled to a *Rhines* stay to exhaust Claim 23. Thus, Payne has failed to demonstrate he is entitled to a stay to present either Claim 21 or Claim 23.

## IV.     Appointment of Counsel

Payne asks the Court to authorize the Federal Public Defender's ("FPD") office to represent him in state court. (Doc. 60 at 15.) The Criminal Justice Act provides for appointed counsel to represent their client in "other appropriate motions and procedures." 18 U.S.C. § 3599(e). The Supreme Court interpreted § 3599 in *Harbison v. Bell*, 556 U.S. 180 (2009), holding that the statute "authorizes federally appointed counsel to represent their clients in state clemency proceedings and entitles them to compensation for that representation." *Id.* at 194. The Court explained that "subsection (a)(2) triggers the appointment of counsel for habeas petitioners, and subsection (e) governs the scope of appointed counsel's duties." *Id.* at 185. The Court noted, however, that appointed counsel is not expected to provide each of the services enumerated in section (e) for every client. Rather, "counsel's representation includes only those judicial proceedings transpiring 'subsequent' to her appointment." *Id.* at 188.

*Harbison* addressed the concern that under the Court's interpretation of § 3599, federally appointed counsel would be required to represent their clients in state retrial or state habeas proceedings that occur after counsel's appointment because such proceedings are also "available post-conviction process." *Id.* The Court explained that § 3599(e) does not apply to those proceedings because they are not "properly understood as a 'subsequent stage' of judicial proceedings but rather as the commencement of new judicial

proceedings." *Id.* at 189.

As to state post-conviction proceedings, the Court noted, "State habeas is not a stage 'subsequent' to federal habeas. . . . That state postconviction litigation sometimes follows the initiation of federal habeas because a petitioner has failed to exhaust does not change the order of proceedings contemplated by the statute." *Id.* at 189–90; *see Irick v. Bell*, 636 F.3d 289, 292 (6th Cir. 2011); *Lugo v. Sec'y, Fla. Dep't of Corr.*, 750 F.3d 1198, 1213 (11th Cir. 2014), (explaining "a state prisoner is not entitled, as a matter of statutory right, to have federally paid counsel assist him in the pursuit and exhaustion of his state postconviction remedies, including the filings of motions for state collateral relief. . . .") *cert. denied sub nom. Lugo v. Jones*, 574 U.S. 1125 (2015).

Nevertheless, the Court has discretion to appoint federal counsel to represent Payne in state court. In *Harbison* the Supreme Court noted that "a district court may determine on a case-by-case basis that it is appropriate for federal counsel to exhaust a claim in the course of her federal habeas representation." 556 U.S. at 190 n.7.

Here, however, the Court has determined that Payne is not entitled to a *Rhines* stay. Based on that determination, together with the *Harbison* Court's discussion of the parameters of § 3599(e), the Court finds it is not appropriate to authorize the FPD to represent Payne in state court.[5]

## V. CONCLUSION

Payne has not demonstrated that a *Rhines* stay is warranted. Claim 21 is plainly meritless and will be denied. Payne's *Simmons*-related IAC claim is technically exhausted; therefore, his petition is not mixed. "The point of a *Rhines* stay is to allow a federal habeas petitioner an opportunity to present unexhausted claims in state court." *Pritchett v. Gentry*,

---

[5] In support of his request for authorization, Payne refers the Court to Ex. C, Judge Claire V. Eagan, Memorandum re Use of Defender Services Appropriated Funds by Federal Appointed Counsel for State Court Appearances in Capital Habeas Corpus Cases (Dec. 9, 2010)). Notably, however, Judge Eagan states that the memorandum is intended to address the issue of expending federal funds in state court once a determination has already been made that it is permissible for a claim to be remanded to state court for exhaustion. *Id.* at 2.

No. 217CV01694JADDJA, 2022 WL 4366996, at *4 (D. Nev. Sept. 21, 2022); *see Anderson v. Jennings*, No. 1:19-CV-00014 JAR, 2022 WL 17480616, at *3 (E.D. Mo. Nov. 21, 2022). In addition, granting Payne's request for a *Rhines* stay would be contrary to the Supreme Court's directive that such stays should be granted only in limited circumstances and that courts must be 'mindful that AEDPA aims to encourage the finality of sentences and to encourage petitioners to exhaust their claims in state court before filing in federal court.'" *Id.* (quoting *Rhines*, 544 U.S. at 276–77).

Accordingly,

**IT IS HEREBY ORDERED denying** Claim 21 (in part).

**IT IS FURTHER ORDERED denying** Payne's Motion for a Stay and Abeyance (Doc. 59).

**IT IS FURTHER ORDERED denying** Payne's request for federal habeas counsel to represent him in state court (*id.*).

Dated this 28th day of June, 2023.

Honorable James A. Soto
United States District Judge